Boos *v.* Morgan *et al.*

No. 15,507.

## Boos *v.* Morgan et al.

130 305
131 228
131 457
131 554
130 305
140 206
130 305
146 111

POWER OF ATTORNEY.— *When Must be Recorded.*—The statute requiring a power of attorney to be recorded does not apply to a power to assign judgments.

JUDGMENT.—*Purchaser of Encumbered land Paying.—Preserving Lien of.*— Where a purchaser of land pays off a judgment for which he is not liable, with a manifested intention to keep the lien alive, equity will preserve it for his protection and for equitable purposes.

SAME.—*Merger of Lien.*—Where the owner of land purchases a judgment which is a lien on the land, and takes an assignment of it, the lien is merged in the fee.

SAME.—*Purchaser of Property from Defendant Paying off Judgment.—Keeping Lien Alive.*—The doctrine of merger will not be applied as against a party not liable for a debt who pays it off to protect property acquired from the person primarily liable.

SAME.—*Merger.—Fraud.*—Merger is never prevented when fraud or wrong would result if it were defeated.

SAME.—*Levy.—Satisfaction.*—A levy is a satisfaction of the judgment to the extent of the value of the property levied upon.

SHERIFF'S SALE.—Land remaining in the possession of a debtor must be sold before resort can be had to land he has sold and upon which a judgment against him is a lien; and the purchaser, by a timely application to a court of equity, may compel the sheriff to first resort to the lands still retained by such debtor.

SAME.—*Bid by Judgment Plaintiff.—Paying Amount of Bid.*—Where a judgment plaintiff bids in the land sold, his receipt to the sheriff for the amount of his bid, when it does not exceed the amount due him on the execution, is a sufficient payment of such bid.

SAME.—*Sale on Satisfied Judgment.*—A sale on a satisfied judgment is void.

SAME.—*Notice of Irregularities.—Bona Fide Purchaser.*—A judgment plaintiff purchasing at his own sale is chargeable with notice of all irregularities. He is not a *bona fide* purchaser.

SAME.—*Extinguishment of Judgment by Sale.*—The sale of land and the payment of the bid, when it is sufficient to satisfy the amount due and costs, is an extinguishment of the judgment.

SAME.—*Irregular Sale.—Collateral Attack.*—A mere irregular sale can not be collaterally attacked.

From the Wabash Circuit Court.

*B. F. Ibach, B. M. Cobb* and *C. W. Watkins,* for appellant.
*J. B. Kenner* and *U. S. Lesh,* for appellees.

VOL. 130.—20

ELLIOTT, C. J.—The appellant alleges in his complaint that on the 15th day of April, 1876, Milton Hendrix recovered a judgment against the appellee Lucas for nine hundred and seventeen dollars, in the Huntington Circuit Court; that Lucas was then the owner of three parcels of land situate in Huntington county, and described in the complaint; that one of the parcels was of the value of four hundred dollars; that Lucas sold it to Henry Kemp; that the other parcel was of the value of twelve hundred dollars; that Lucas sold to the appellee Morgan the second of the parcels of land for one thousand dollars; that the third parcel of land was of the value of fifteen hundred dollars, and was sold to John Edgar; that the judgment in favor of Hendrix was a lien upon all of the several parcels of land. The complaint further alleges that, after Morgan purchased of Lucas the second parcel of land, Lucas became the owner of another parcel; that this last or fourth parcel was purchased from Lucas by the appellant; that the appellant paid the full value of the land, and received a warranty deed therefor; that at the time of his purchase of the fourth parcel of land from Lucas the appellant had no actual notice or knowledge of the existence of the Hendrix judgment; that Lucas was, at the time of the appellant's purchase, the owner of personal property of the value of two thousand dollars, and real property of the value of two thousand dollars; that all of this property was situated in Huntington county and subject to execution. It is also alleged in the complaint that Lucas became the owner of another parcel of land before the sale to the appellant; that the land of which he became the owner was sold by Lucas since the appellant became the owner of the fourth parcel of land; that on the 7th day of October, 1880, John Morgan paid the Hendrix judgment; that "Morgan attempted to take an assignment of the judgment, which attempt was made in the order book by one L. P. Milligan under and by virtue of a pretended power of attorney, which power of attorney was never recorded;" that on the 3d day

of April, 1880, Hendrix caused an execution to be issued on his judgment; that the sheriff levied the execution, but returned it without a sale, and a *venditioni exponas* was issued; that a sale was made of the lands on this last writ, and the lands purchased by Morgan; that he entered satisfaction on the record of the judgment assigned to him. It is still further alleged in the complaint that the appellant had no notice of the judgment or the proceedings thereunder until after the sale; that he then examined the records, and found that the judgment had been entered satisfied; that the writ on which the sale was made was issued with the entry of satisfaction uncancelled, and without any disposition of the property levied upon under the former writs, or any order vacating the first sale; that the appellant had no notice of the last sale until long after it was made.

The position first assumed by counsel is that the assignment of the judgment by Milligan, the attorney in fact of the original judgment creditor, was ineffective because the power of attorney was not recorded. There is no strength in this position. If, as the complaint tacitly concedes, Milligan was the attorney in fact of the judgment creditor, the assignment is not ineffective merely because the instrument investing the attorney with authority was not recorded. The statute requiring a power of attorney to be recorded does not apply to a power to assign judgments.

A more serious question than that disposed of arises on the contention that Morgan paid the judgment. The complaint avers that he did pay it, but it also shows that he took an assignment of it. We think it quite clear that if Morgan had extinguished the judgment by payment, he could not use it to the injury of the appellant, as the latter had a right in equity to have the other property of the judgment debtor first subjected to the payment of the judgment lien. As Morgan was not primarily liable for the judgment, and as he did take an assignment of the judgment, the conclusion required by the authorities is that he did not extinguish

the judgment. It is settled beyond controversy that where the purchaser of land pays off a judgment for which he is not liable, and there is an intention manifested to keep the lien alive, equity will preserve it for his protection and use for equitable puposes. *Troost* v. *Davis*, 31 Ind. 34; *Hanlon* v. *Doherty*, 109 Ind. 37; *Strohm* v. *Good*, 113 Ind. 93; *Elston* v. *Castor*, 101 Ind. 426 (51 Am. Rep. 754); *Hewett* v. *Powers*, 84 Ind. 295; *Lowrey* v. *Byers*, 80 Ind. 443; *Smith* v. *Ostermeyer*, 68 Ind. 432; *Howe* v. *Woodruff*, 12 Ind. 214; *Barnes* v. *Mott*, 64 N. Y. 397. We hold, upon this point, that the payment did not extinguish the lien of the judgment, but whether equity will suffer Morgan to use it to the injury of the appellant is quite another question. That question we will presently consider. All we do now is to adjudge that there was no complete or absolute extinguishment of the judgment. In holding this we necessarily affirm that the case is not within the rule that where one pays off a judgment for which he was primarily liable the judgment is extinguished.

The authorities to which we have referred conclusively answer the appellant's contention that, as Morgan was the owner of the fee, the lien of the judgment was merged when he acquired it by assignment. It is a settled principle of equity jurisprudence that the technical doctrine of merger can not be applied against a party not liable for a debt, who pays it off to protect property acquired from the person primarily liable. The intention and the situation of Morgan prevented a complete and absolute merger, and kept the lien of the judgment alive in his favor for equitable use. 2 Pomeroy Equity, sections 791, 792, 797.

The remaining question upon this branch of the case would be one of much difficulty if it were not settled by a former decision. Granting that there was no complete extinguishment of the judgment either by payment or by merger, there yet remains the question, can Morgan so use the judgment lien as to subject the land of the appellant to sale to satisfy it? As the

initial step in the discussion, we state, as a fundamental principle, that merger is never prevented when fraud or wrong would result if it were defeated. *Worthington* v. *Morgan*, 16 Sim. 547 ; *Hutchins* v. *Carleton*, 19 N. H. 487 ; *McGiven* v. *Wheelock*, 7 Barb. 22. This is a just principle, and adherence to it is required by considerations of consistency as well as considerations of justice. A legal rule stands, unless confronted by a superior equity. If a legal rule will secure justice, equity will do nothing to defeat its operation, but, on the contrary, will do all in its power to give it complete and effective force. If, therefore, it is not equitable to defeat merger against the appellant, as to him equity will give the legal doctrine full sway, although as to others it may interpose to break down the rule of the law. Whether the appellant is in such a situation as to ask equity to allow the legal rule to take its course, we will hereafter determine and declare. Another matter demands consideration before examining the question of the influence exerted by the position which the appellant occupies, and that is this : Morgan must rely entirely upon equity to prevent a merger as against the appellant, and if what he asks is unconscionable, equity will not lend him a helping hand. Equity keeps the judgment alive only that it may be used by him for an equitable purpose. He can not, therefore, succeed upon equitable principles, unless his case is one in which good conscience requires that a legal rule be broken for his benefit, and the judgment kept alive in furtherance of justice. The legal rule is against him, and only equity can relieve him. His appeal is to a court of conscience, and it will be fruitless if his case is tainted by fraud or wrong. *Kitts* v. *Wilson*, *post*, p. 492. While it may be true that there is no complete merger under the legal rule, it does not follow that the judgment will be kept alive for an inequitable purpose.

We come now to the question, what is the equity of the situation ? If it is with Morgan, the appellant must fail ; if against him, the legal rule must, if we adhere to principle,

and do not yield to the former decision, prevail, and the appellant succeed. Appellees' counsel say: "A sale of one tract of land is not invalid, notwithstanding one who was a later purchaser might have an order in equity for a sale in the inverse order had he properly applied for the same." They cite *Sansberry* v. *Lord*, 82 Ind. 521. It seems clear that the assertion of counsel, if it correctly states the rule, proves that their client is in no situation to invoke the aid of equity to overthrow a rule of law for his benefit against one possessing such equities as the appellant possesses. In the case to which counsel refer it was said: " It is presumed to be the duty of the judgment debtor, as between himself and his vendee, to pay the judgment, and if he retains any of the property encumbered by it, a court of equity will, without impairing the lien, require the judgment creditor to first exhaust the property held by the debtor so as to protect his vendee." This doctrine is strongly against the appellee Morgan, for he is here asking the aid of equity to break a legal rule, while he is himself seeking to do what equity condemns, inasmuch as he is asking equity to assist him, while he is at the same time seeking to break down the equitable doctrine that property shall be sold in the inverse order, commencing with that remaining in the judgment debtor, and going next to the property last sold by the debtor.

The rule that a purchaser of land may, by a timely and appropriate application to a court of equity, have lands remaining in the debtor first sold, and lands sold in the inverse order of their sale by the debtor, is a familiar and well established one. *Richey* v. *Merritt*, 108 Ind. 347 ; *Ritter* v. *Cost*, 99 Ind. 80; *Caley* v. *Morgan*, 114 Ind. 350; 12 Am. and Eng. Encyc. of Law, 216, note 1. But the case of *Caley* v. *Morgan, supra,* while fully recognizing the principle stated by us, adjudged that it is not applicable to such a case as this, for the reason that the owner of the land did not ask the assistance of a court of equity before the sale. The decision in that case, although not directly conclusive, because

the parties here are not the same as in that case, must, as we suppose, be regarded as decisive of the question here under immediate mention, inasmuch as the judgment there involved, and the questions there under discussion were, with one exception, the same as those here under consideration. We yield to the decision in the case referred to with reluctance, because we are strongly impressed with the belief that it was not well decided, inasmuch as we believe that, while there was not a complete merger, Morgan can not escape the legal rule for the purpose of using the judgment in violation of an equitable principle.

There is in the present case one important and material fact not in the case of *Caley* v. *Morgan, supra.* That fact is this: Morgan caused the land to be exposed to sale without having the first sale set aside, or the entry of satisfaction made by him vacated. That fact was not considered in the case referred to, so that there is no judgment upon it. As the record exhibited the facts the judgment was satisfied, the first sale effective, and Morgan's rights under that sale complete. It is no doubt true that the appellant was charged with such notice as the record imparted, and that his averment that he had no actual notice of the judgment lien is unavailing. *Taylor* v. *Morgan*, 86 Ind. 295. But he had a right to rely upon the whole record, and part of the record informed him that the judgment was satisfied, and that part of the record was made by Morgan himself. If the appellant is bound by the record, so, also, is Morgan. In our judgment Morgan had no right to disregard the first sale at his own pleasure, and make a second one after having the judgment entered satisfied. If a stranger had bought the property, we think it quite clear that Morgan could not, by his own act, have treated the sale as a nullity. The sale was complete, the receipt of Morgan to the sheriff for the price of the property was as effective as payment in actual money would have been, for it is settled that where a judgment creditor buys at his own sale his entry of satisfaction of the judg-

ment is equivalent to payment in money, inasmuch as there is no reason for going through the empty form and idle ceremony of handing the money over to the sheriff and then receiving it back from him. It is also well settled that a sale upon a satisfied judgment is void. *Chapin* v. *McLaren*, 105 Ind. 563; *Myers* v. *Cochran*, 29 Ind. 256; *State, ex rel.*, v. *Salyers*, 19 Ind. 423; *Laval* v. *Rowley*, 17 Ind. 36.

Morgan was the purchaser at his own sale, and even in ordinary cases would be held chargeable with notice of all irregularities, for he does not occupy the position of a *bona fide* purchaser. *Raub* v. *Heath*, 8 Blackf. 575; *Harrison* v. *Doe*, 2 Blackf. 1; *Keen* v. *Preston*, 24 Ind. 395; *Hamilton* v. *Burch*, 28 Ind. 233; *Piel* v. *Brayer*, 30 Ind. 332; *Bole* v. *Newberger*, 81 Ind. 274; *Carnahan* v. *Yerkes*, 87 Ind. 62; *Shirk* v. *Thomas*, 121 Ind. 147, and authorities cited; *Warren* v. *Hull*, 123 Ind. 126; *Johnson* v. *Hess*, 126 Ind. 298 (311). If a third person had bought the land at the first sale, and had paid his bid, the receipt of the amount paid by such purchaser by the execution creditor would unquestionably have extinguished the judgment. *Klippel* v. *Shields*, 90 Ind. 81; *Shields* v. *Moore*, 84 Ind. 440; *Moon* v. *Jennings*, 119 Ind. 130; *Kreider* v. *Isenbice*, 123 Ind. 10.

The appellee directs our attention to several authorities which we have examined, but we find nothing in them which opposes the conclusion we have stated. The case of *Harrison* v. *Doe, supra*, is adverse to the appellees, for in that case it was held that the sale was void as to the execution creditor purchasing at his own sale, but it is tacitly asserted that the rule would have been different had the land been bid off by a *bona fide* purchaser at the sheriff's sale. The decision in *Morss* v. *Doe*, 2 Ind. 65, is that a sale where there is no appraisement is void, and the decision in *Fletcher* v. *Holmes*, 25 Ind. 458, is to the same effect. In *Davis* v. *Campbell*, 12 Ind. 192, it was held that a sheriff's sale could not be successfully attacked in a collateral proceeding upon

the ground that the sheriff refused to levy on personal property of the debtor. It is evident that none of these cases, nor any of a similar type, is in point here, for here there is of record a satisfaction of the judgment.

We agree fully with the statement of appellee's counsel that there are cases where a levy may be abandoned, but we can not agree that the rule that a levy may be abandoned controls such a case as this, where the record affirmatively shows that the first sale operated *prima facie*, at least, to satisfy the judgment. There is here much more than an abandonment of a levy and much more than the abandonment of a void sale, for the sale was, so far as the record shows, so effective as to induce the judgment creditor to satisfy the judgment of record. Presumptively, at least, the sale was not void or even voidable. If it was not void the appellees had no right at their sole pleasure and mere will to treat it as of no effect. They can not occupy inconsistent positions at their own volition. The argument, and it is a sound one, that a merely irregular sale can not be collaterally attacked, strikes strongly at the very foundation of the appellee's position. If an irregular sale can not be collaterally assailed, certainly the judgment creditor can not at his mere will or pleasure repudiate it and again expose the property to sale. He must first get rid of his own sale and his own entry of satisfaction. The appellee Morgan had a right to have the sale vacated if it was illegal or irregular. *Clayton* v. *Glover*, 3 Jones Eq. 371; *Galbreath* v. *Drought*, 29 Kan. 711. But having made the sale, purchased the property, entered the judgment satisfied of record, he has no right to ask that it shall be presumed, as against a *bona fide* purchaser from the judgment debtor, that the sale was illegal. It is settled that *prima facie* a levy is a satisfaction of the judgment to the extent of the value of the property levied upon. *McCabe* v. *Goodwine*, 65 Ind. 288, and authorities cited; *McIver* v. *Ballard*, 96 Ind. 76; *Harmon* v. *State, ex rel.*, 82 Ind. 197. There is much more reason for applying the

presumption of satisfaction to such a case as this, than to a case where there is nothing more than a levy, for here there was a sale, and, as the record made by Morgan himself affirmatively shows, a satisfaction of the judgment.

We adjudge, without going further in this case, for there is no necessity for doing so, that the complaint shows a *prima facie* satisfaction of the judgment upon which the land was sold, and that the complaint is at least sufficient to drive the appellees to answer.

Judgment reversed.

