GERTRUDE N. BOICE et al.

*v.*

CORNELIUS N. CONOVER et al.

[Filed June 13th, 1905.]

1. The assignee of a judgment is chargeable with the knowledge of his attorney, concerning litigation affecting the judgment, where his attorney negotiated the assignment.

2. A chattel mortgage was held invalid against a judgment creditor under the Registry acts, and the proceeds of sale of the chattels, which proceeds were in court, were directed to be paid first to the judgment creditor. The judgment debtor then paid the judgment by his mortgage on his own lands, and had the judgment assigned for his benefit to the mortgagee of the lands, who (through their common attorney) received, for the benefit of the debtor, the money paid out of court to him as assignee of the judgment. On an appeal subsequently taken the chattel mortgagee was held to be subrogated to the judgment.—*Held*, (1) this payment of the judgment by the debtor himself discharged the lien of the judgment from the lands of the parties to this suit (other than the judgment debtor), who claimed title under a partition made *pendente lite*, but before decree for subrogation to the judgment, subsequently made in favor of the chattel mortgagee.—*Held*, (2) the chattel mortgagee, by reason of this payment of the judgment by the debtor, was entitled to the proceeds of sale of the mortgaged chattels paid out of court to the assignee of the judgment for the benefit of the debtor, and as this payment was not disclosed to the court at the hearing upon which decree for

subrogation was made, the judgment creditor, the assignee and the judgment debtor are estopped from denying the existence of the judgment for the purpose of giving the mortgagee the benefit of the subrogation as against lands owned by the debtor at the time of the decree, and for compensating the mortgagee by reason of the discharge of the judgment from the lands of other parties to the suit, originally liable to the judgment.

3. Even as against purchasers *pendente lite*, claiming under the parties to a suit, knowledge of the suit is notice only when the suit is prosecuted with reasonable diligence.

4. A judgment creditor of one co-tenant is not bound by a voluntary partition after the recovery of his judgment, though it be fairly made, and may decline to be bound by the partition, and may sell the undivided interest in the entire land as if no partition had been made; but the purchaser may be brought into equity for a partition of the entire land owned in common before the voluntary partition, and may, by equities raised against him, or the tenant under whom he claims, be required to receive on the partition the lands received by the judgment debtor on the voluntary partition.

Heard on bill, cross-bill, answer, proofs and decree, and supplemental bill after decree, answers, cross-bill, replications and proofs.

This case involves the application of the doctrines of subrogation and of *lis pendens* to a somewhat complicated state of facts. The facts are, in the main, undisputed, and so far as material for present purposes, I find them to be as follows:

On September 8th, 1893, the firm of Conover & Allen (composed of Cornelius N. Conover and William Allen) executed a chattel mortgage on personal property of the firm to the defendant Edwin Allen for $4,800. Subsequently and on October 21st, 1893, they executed a mortgage on the same property to the complainants, Gertrude N. Boice and her husband, for $1,500. On December 12th, 1893, the defendants the Mapes Formula and Peruvian Guano Company recovered a judgment against the firm for $1,110.11, upon which execution was issued and a levy made on the tangible personal property covered by the chattel mortgages, and also upon six tracts of land in Middlesex county, in which Cornelius N. Conover, one of the partners, then owned an undivided one-half interest, subject to his mother's right of dower. On December 28th, 1893, the complainants,

the holders of the chattel mortgage second in date, filed a bill attacking the validity of the first mortgage and claiming priority over this mortgage as to portion of the amount secured by it. To this bill the second mortgagee and the judgment creditor were made defendants, and a receiver of the property covered by the chattel mortgage was appointed, who sold the property, retaining the funds subject to the order of the court.     Edwin Allen answered the bill, claiming priority over complainants' mortgage, and also over the Mapes company judgment on the mortgaged chattels, and, after the payment of the proceeds of sale into court, filed a cross-bill against complainant and the Mapes company, claiming a valid prior lien on the funds against both these parties, and also claiming that for the payment of the Mapes company judgment resort should first be had to the real estate levied on, and that the securities should be so marshaled.     The Mapes company answered the cross-bill, claiming, among other things, that the affidavit annexed to the Edwin Allen mortgage did not state the true consideration of the mortgage, and was therefore void as against it, and insisted that the proceeds of the sale of the chattels should be first applied to the judgment, and denied the right to marshal the assets.     The complainant Gertrude Boice (her husband having died) also, in her answer to the cross-bill, set up the invalidity of the defendant's mortgage, because it was made to secure the individual indebtedness of one partner, and was therefore fraudulent against a creditor of the firm such as she claimed to be. On the hearing before me on the original bill and cross-bill, I held that the objection to the affidavit was well taken, and that the mortgage of Edwin Allen was, under the Recording act, void against the Mapes company as judgment creditor, but was not void against complainant's mortgage, inasmuch as she was, under her mortgage, not a creditor, but a purchaser, and succeeded only to the mortgagor's rights, which were subject to the mortgage previously given.     The proceeds of sale in the hands of the receiver were therefore directed to be marshaled so as to pay first the execution creditor to the extent of the amount due on Edwin Allen's mortgage.     As to marshaling in Edwin Allen's favor the securities held by the Mapes company, so as

to require the real estate of Cornelius N. Conover to be first exhausted, I held that this could not be directed for two reasons —*first,* because there could be no marshaling unless all the securities to be marshaled were valid against the creditor whose security was marshaled, and under the statute the chattel mortgage was "absolutely void" as to the judgment creditor, and could not be thus made indirectly valid, and *second,* because the principle of marshaling was not applicable, as the Mapes company, by its judgment and levy, had the right to resort to both the joint and several property, while Edwin Allen had a lien only on the joint property, and nothing appeared in the cause showing that, as between the partners themselves, Cornelius N. Conover, one of the partners, or his property, was equitably liable to pay the firm's debt in discharge of the firm's assets. Edwin Allen's cross-bill was based throughout on allegations both of fact and law that his mortgage was a valid security against the judgment creditor, and in the bill there was no allegation or prayer setting up or claiming any alternative right to relief of any kind, by way of subrogation or otherwise, on the basis that if his security was held invalid against the judgment creditor, yet being valid against the judgment debtor, he was entitled to be subrogated to the judgment, ·if the mortgaged property was taken from him under the statute. This claim was not presented at the hearing of the cause, nor considered in my opinion (*35 Atl. Rep. 402*), as seems to have been supposed by the learned justice delivering the opinion on appeal. *63 N. J. Eq.* (*18 Dick.*) *275.* At the settlement of the decree, however, and upon the basis of a decree that the chattel mortgage was void as against the judgment creditor, and that the judgment creditor was entitled to be first paid from the proceeds of sale of the mortgaged chattels, application was made in the cause for the first time to add to the decree a clause of subrogating Edwin Allen to the judgment creditor's lien. This was denied for reasons then given orally, but which, as I now recall them, were that to allow subrogation against the judgment creditor would be substantially marshaling the securities, and that, under the statute making the mortgage absolutely void, it could not, as against the creditor, be considered valid for the purpose of charg-

-ing him with an equity or notice of an equity of any kind. The reason against subrogation attributed to me in the opinion on appeal, *63 N. J. Eq. (18 Dick.) 275*, was one of the reasons given in my opinion against a marshaling of securities, and not on the question of subrogation. The final decree in the cause, made on January 20th, 1897, directed that the receiver, out of the funds in his hands ($1,342.32, less receiver's costs), first pay to the Mapes company the amount due on its judgment ($1,076.61, with interest from December 12th, 1893). An appeal from this decree was taken on January 18th, 1900, two days before the expiration of the three years allowed for appeal. On the appeal it was held, *Boice v. Conover, 63 N. J. Eq. (18 Dick.) 273 (1901)*, that the chattel mortgage was void against the judgment creditor, under the statute, and the securities could not be marshaled so as to interfere with the creditor's right to resort to the personal estate. It was held, however, that the defendant Edwin Allen was entitled to be subrogated to the lien of the judgment on the payment thereof out of the proceeds of sale. And a decree was directed to be entered in this court, modifying its former decree, and "subrogating the said Edwin Allen to the extent of $937.09, with interest from January 20th, 1897 (the date of the final decree), to the lien of the said judgment of the Mapes, &c., company upon lands of said Cornelius Conover, as said lien existed immediately before the payment of said sum to said judgment creditor under said decree," and the proceedings were remitted to this court, to be therein proceeded on according to law and the practice of this court. Upon the *remittitur* coming down a motion was made upon notice for the entry of a decree in this court in accordance with the *remittitur*, and also for a direction to the sheriff to proceed to sell the lands levied on under the execution, to raise and pay to Edwin Allen the sum for which he was subrogated. On this motion, the defendant Cornelius N. Conover presented a petition resisting the application upon facts showing, as he claimed, that Edwin Allen was not entitled to enforce the decree for subrogation, and also showing that the judgment had been assigned to one Clarence L. Speyers pending the suit and before decree, and that pending the suit the lands, one-half interest in which had been levied on,

had been divided between the tenants in common, and that after
this division the lands set off, or portions thereof, had been con-
veyed or mortgaged to several persons named. The petition
prayed that Edwin Allen by his delay might be decreed to have
waived the benefit of his appeal, and that the lands alienated by
the judgment debtor might be protected to the grantees. A
petition was also filed by Edwin Allen setting up the assignment
of the judgment *pendente lite,* and before the final decree in
chancery by the Mapes company, to the defendant Speyers, who
was charged to have had actual knowledge of the suit, and ask-
ing leave to make him a party defendant in the cause in order
to enforce the decree against him. The motion for decree and
for sale under the execution and also the two petitions came on
to be heard together, and on August 7th, 1901, a decree was
entered on the *remittitur* following the language of the decree
on appeal and "subrogating the said Edwin Allen to the extent
of $937.09, with interest from January 20th, 1897, to the lien
of the said judgment of the Mapes, &c., company, upon lands of
Cornelius Conover, as said lien existed immediately before the
payment of said sum to said judgment creditor under said de-
cree."

On the two petitions of Edwin Allen and Cornelius N. Con-
over an order was made reciting that it was necessary that a bill
should be filed by the defendant Edwin Allen in order that he
might, so far as he was entitled to the same, have the benefit
of the proceedings in the cause against Speyers, the assignee of
the judgment, and against the persons who had acquired inter-
ests in the real estate levied on, and in order to revive and
continue the cause against these persons, and to carry into effect
the decree of the court of errors and appeals subrogating Edwin
Allen to the lien of said judgment, and directing that he have
leave to file an original bill in the nature of a supplemental
bill. The supplemental bill now brought on for hearing was
thereupon filed, making defendants all the defendants in the
original bill, and also Speyers, as the assignee of the judgment,
together with the defendants who had acquired any interests in
the lands levied on subsequent to the judgment and levy. The
entire lands were levied on, but at the time of the judgment

and levy Cornelius Conover's interest was an undivided one-half interest in the six tracts of land which were then owned by him and his brother, David A. Conover, subject to the right of dower of their mother, Gertrude N. Boice, the complainant in the original bill. After the filing of the original bill (on December 28th, 1893) and pending the suit, a voluntary petition and settlement of the dower right was made between the tenants in common and the dowress, on December 13th, 1895, by mutual deeds, whereby lots Nos. 1, 3, 4 and 5 were conveyed to David A. Conover; lot 2 was conveyed to Gertrude N. Boice, the dowress, and lot 6 was conveyed to Cornelius N. Conover, by deed of release, reciting that it was made on a voluntary partition between the widow and heirs-at-law, carried out by this and other deeds of the same date. The title to lot 6 is still in the judgment debtor. On April 28th, 1896, and while the judgment was still outstanding and wholly unpaid, David A. Conover conveyed to the defendant George W. Metlar lots Nos. 4 and 5 (two of the lots conveyed to him in the partition), by deed of full covenants and warranty, and for further protection against the judgment David A. Conover executed a bond and mortgage on lots 1 and 3 (the other two lots conveyed to him) in the sum of $1,500, conditioned to indemnify Metlar against loss by reason of the judgment and to remove it from the lands within three years. Edward Allen, in the supplemental bill, claims subrogation to the benefit of this bond and mortgage, so far as necessary to pay his decree. The defendant Metlar still holds this mortgage, and the title to lots 4 and 5. On September 14th, 1896, also before the decree in chancery, David A. Conover conveyed to one Whitty the lot No. 1, and Whitty, subsequent to the decree, and on July 16th, 1898, conveyed the lot to the defendant Henrietta M. Parker, who now owns this lot. In July, 1896, after the partition and before decree in the original suit, the defendant Cornelius N. Conover, for the purpose of paying the judgment of the Mapes company, borrowed of the defendant Speyers the sum of $1,400, to secure which Conover gave a mortgage on the lot No. 6 conveyed to him on the partition, and Conover, having received this money, paid to the Mapes company the amount due on the judgment,

which was assigned by the Mapes company to Speyers by assignment dated July 7th, 1896. The attorneys who acted for Speyers in making the loan were also the attorneys of Cornelius N. Conover in the suit, and paid the amount due on the judgment and received the assignment. The assignment was not recorded, nor was any application made by Speyers to be made a party to the suit, nor does the assignment appear to have become known to Edwin Allen or his solicitors until after the decision on appeal. The purchase-money on the assignment was paid to the attorney of the Mapes company, who received it as on a purchase by Speyers and paid the same to his clients. This attorney, Mr. Runyon, was also the receiver in the cause, and held the proceeds of sale of the chattels. The final decree, made on January 20th, 1897, directed that, in the first place, the Mapes company was entitled to be paid out of the balance in the receiver's hands (after deducting his fees and costs) the sum of $1,076.61, with interest, &c., in satisfaction of its judgment and costs of suit, and directed the receiver to make this payment. On February 1st, 1897, the receiver paid to Messrs. Voorhees & Booraem, acting, as he supposed, as the attorneys of Speyers, the assignee of the judgment, the sum of $1,279.20, and on February 27th, 1897, the further sum of sixty-four cents. After these payments, which exhausted the funds in his hands applicable thereto, there seems to have been still a balance of $60.50 due, or claimed to be due, on the judgment. These payments were made by the receiver on the directions given in the final decree itself and without any special application to the court for directions for payment while the right to an appeal still ran. The payment, however, was not made until after the time limited by the rule 150 for the stay of process on the decree pending ten days' time for appeal. It appears by the evidence in the cause, and by Speyers' answer to the supplemental bill, that the money directed to be paid by the decree as due on the judgment was received by Messrs. Voorhees & Booraem, who were, as I conclude, the attorneys in this transaction both of Mr. Speyers and Mr. Cornelius N. Conover, and that while the receiver paid the money to them as representing Speyers, they received it under an agreement between Speyers and Conover,

made at the time of the loan by Speyers, by which the money, if directed to be paid on the judgment by the decree, was to be paid to Conover; that they retained it as his money until, under his direction, they paid the money to his mother, the complainant, for debts due her. Speyers' agreement on taking the mortgage for $1,400 was that the money was advanced for the purpose of paying the judgment, and leaving his mortgage the first lien on the property. Upon the receipt of the money from the receiver, Speyers, acknowledging that the judgment had been satisfied as against Conover, executed under seal a warrant for satisfaction of the judgment, fully acknowledged for record, and dated February 26th, 1897. This warrant was left in the hands of Messrs. Voorhees & Booraem, the solicitors who acted for both Speyers and the judgment debtor, and under the evidence and the answer of Speyers I conclude that it is held for the benefit of Cornelius N. Conover, and that the judgment against the other partner was intended to be kept alive for the benefit of Conover by the assignment. After receiving the money from the receiver, Mr. Speyers, as appears by his answer and the evidence, considered the judgment as paid, so far as Cornelius N. Conover was concerned, and after receiving this money Speyers' attorneys represented to subsequent purchasers of the land that the judgment was paid as to Cornelius N. Conover, except as to this balance. The purpose of keeping the judgment alive on the record is stated in Speyers' answer to have been the protection of the right of Speyers and Cornelius N. Conover to recover a *pro rata* share thereof against William Allen, the co-defendant in the judgment, and that the judgment was, as he supposed, satisfied as against Cornelius N. Conover, and if of any value was only against William Allen. The transfers of the lands allotted to David A. Conover in the partition, which were made after payment of the judgment by the receiver, were as follows: On September 8th, 1897, eight months subsequent, and no appeal having yet been taken, David A. Conover conveyed to the defendant MacLaughlin lot No. 2, the remaining lot conveyed to him on the partition, and at the time of this conveyance to MacLaughlin the mortgage given by David A. Conover to Metlar, on lots 1 and 2, was still

unsatisfied, and the judgment was still unsatisfied of record. Upon application on behalf of this purchaser to Messrs. Voorhees & Booraem for information as to the judgment, the satisfaction piece and the assignment were shown and the statement made that the judgment was paid, except the small balance of $60, and that it was kept alive for the purpose of obtaining this balance due on the decree in the chancery suit. This balance, as appears by Speyers' answer and the evidence, was to be collected from Edwin Allen for the benefit of Cornelius Conover.

On July 16th, 1898, Mr. Whitty, who had received from David A. Conover, on September 14th, 1896 (and pending the suit), a deed from David A. Conover for lot No. 1, conveyed to him in the partition, conveyed this lot to the defendant Henrietta M. Parker, and substantially the same statement in reference to the judgment and its satisfaction was made by the same person to the person inquiring on her behalf. So that both the purchasers from David A. Conover, who took deeds for any portion of the property after the execution of the satisfaction piece by Speyers, relied on the execution of this warrant and the statement of the attorneys, in whose hands it had been left by Speyers, and the judgment debtor. The changes in title after the partition to the lot conveyed to Mrs. Boice, the dowress, on the partition of December, 1895, were as follows: On April 7th, 1898, Gertrude N. Boice and her husband executed a bond and mortgage on this lot to one John S. Nevins for $2,100, which mortgage is now held by the defendant Polhemus as guardian of an infant entitled to a share of the Nevins estate. The supplemental bill prays to have the benefit of this mortgage for the satisfaction of the decree of subrogation. The guardian has not answered, and decree *pro confesso* has been taken. On January 25th, 1900, Mrs. Boice died intestate, leaving as heirs-at-law her sons, David A. Conover and Cornelius N. Conover, who, with their wives, on August 23d, 1900, conveyed the lot to the defendant Prucella, who now holds the title. He executed a purchase-money mortgage to his grantors for $1,900, which was subsequently, and after the decision on appeal, assigned to James M. Boice, the husband of Gertrude N. Boice,

and one of the complainants in the original suit. The benefit of this mortgage, also, is claimed by the supplemental bill, and decree *pro confesso* has been taken against James Boice. On July 30th, 1901, and after the decision on appeal, Speyers recovered judgment on his bond for $1,404.50 in the supreme court, and on August 3d, 1901, the administrator of Mrs. Boice recovered a judgment against Cornelius N. Conover for $1,-081.66 on his individual debt, which was levied on the lands then owned by Conover, and it is claimed that these lands should be first applied to the payment of his individual debts, in preference to the debts due from the firm.

The further right is claimed by the bill to follow the moneys received by Speyers from the receiver in satisfaction of the judgment, and which were finally, by the direction of the judgment debtor, paid over to Mrs. Boice. Defendant Nevins is made party as her administrator, and although her estate has been settled after a decree barring creditors, it is alleged that a surplus remains in the administrator's hands, and the benefit of this surplus is claimed for payment of the decree. The administrator answers, alleging that the money received by Speyers' consent and Cornelius N. Conover's direction was, after deducting the debt due to her attorneys, paid to her on account of debts Cornelius Conover owed to her, and the right to follow the money is denied. The Mapes company filed a cross-bill against Speyers for indemnification if they be held liable on the supplemental bill.

*Mr. Alan H. Strong,* for Edwin Allen, the complainant in cross-bill and supplemental bill.

*Mr. Freeman Woodbridge, Mr. Willard P. Voorhees, Mr. John S. Voorhees* and *Mr. Charles C. Runyon,* for the defendants in supplemental bill.

*Mr. Theodore B. Booraem,* for Clarence L. Speyers, George D. Nevins, administrator of Gertrude N. Boice, and Cornelius N. Conover.

EMERY, V. C. (after statement).

The decree on appeal directing the subrogation of Edwin Allen to the lien of the judgment settled the right to subrogation as against the parties to the suit, and all persons bound by the decree, but does not itself execute or work out the subrogation, and on the *remittitur* the cause is now before this court for that purpose. At the time of filing the original bill, the Mapes company, as judgment creditor, and Cornelius N. Conover, as judgment debtor, and owner of the lands, subject to the judgment and levy, were the only persons directly interested either in the judgment, or in the mortgaged chattels or land, and if this situation had continued pending the suit and until the *remittitur,* the subrogation would have been worked out by a decree (on supplemental bill, if necessary) that upon payment of the judgment by the receiver, the judgment creditor assign the judgment to Edwin Allen for the collection thereby of the amount found due to him by the decree. If the security to which subrogation was to be made were a decree of this court made in the suit, or an equitable lien, like a mortgage, before the court for foreclosure or redemption, then the subrogation might be effected directly by a decree of this court directing the sale of the lands to pay the party entitled to be subrogated. But the judgment is a purely legal lien on lands which were not and could not be subject to the direct order or decree of this court in the suit, and the only control over the lands subject to the judgment is by directions as to the legal ownership or control of the judgment. The right to subrogation is not the same as the right to an assignment, but an actual assignment may be necessary in order to effect subrogation. *3 Pom. Eq. Jur. (3d ed.) 1214.* In *Hill* v. *White, 1 N. J. Eq. (Sax.) 435,* an assignment of a mortgage was directed for this purpose, while in *Bigelow* v. *Cassedy, 28 N. J. Eq. (11 C. E. Gr.) 557 (Court of Errors and Appeals, 1875),* it was held that no assignment was necessary, the lands to be sold being under foreclosure in the suit. In the present case the principle of subrogation has been extended to a new class of cases, viz., cases arising under the Recording acts, where the grantee or mortgagee has failed to comply with these acts, and his property has been subsequently taken by a judg-

ment creditor to pay the debts which the grantor or mortgagor, having conveyed with warranty, was, as between him and his grantee, liable to pay. This principle was applied in a case where the property of the mortgagee was taken by a decree of the court, and the right to subrogation arose by reason of this taking, and all the parties interested (mortgagee, judgment creditor and mortgagor) were before the court in relation to the proceeds of the mortgaged property, and were at the time of the decree apparently the only persons interested. I think the subrogation must be carried out in a case of this kind by considering the mortgagee as equitably entitled, by reason of the decree, to an actual assignment of the judgment, and that the cause on the supplemental bill must be disposed of on his equity to an assignment under the decree, modified or controlled, so far as the facts shown by any of the defendants entitle them to any modification of such right to an absolute assignment, either against Edwin Allen or between themselves. Subrogation, being an equitable right or remedy, is applied only with due regard to the legal and equitable rights of others. *Gaskill* v. *Wales, 36 N. J. Eq. (9 Stew.) 527, 533 (Court of Errors and Appeals, 1883).* And all persons interested either in the judgment or lands covered by it at the time the subrogation is worked out are entitled to be heard as to their equities, either against the claimant of the right or against their co-defendants subject to the burden. As to the defendant Speyers, as assignee of the judgment and holder of a subsequent mortgage and judgment against Cornelius N. Conover on part of the lands, and as to the defendant Cornelius N. Conover, as the present owner of a portion of the lands levied on under the judgment, there is little difficulty. The assignment to Speyers was received with actual notice of the pendency of the suit, and that one of the objects of the suit was the marshaling of the securities. Speyers is chargeable in this respect with the knowledge of his attorneys, who were also Cornelius N. Conover's solicitors in the suit, and his answer shows that the assignment to him was held for the purpose of giving Cornelius N. Conover the benefit of the payment of the judgment from the mortgaged property. If the assignment of the judgment to Speyers could on the facts be

considered as a purchase of the judgment as a valid security against Conover, then Speyers' tenure of it and receipt of the money thereon under the decree was subject to any decree on appeal as to his right to receive the money in the hands of the receiver for the payment of the judgment and the conditions of its receipt. But from the answer of Speyers and the evidence in the case, it is clear that the transaction of the assignment, so far as Speyers and the judgment debtor are concerned, was not intended as a purchase of the judgment by Speyers as an outstanding security against Cornelius N. Conover, but was a payment of the judgment by his own money, raised by a mortgage on his lands, to Speyers, which was to be reimbursed to the debtor by means of the assignment, which kept the judgment alive for that purpose. Mr. Booraem, who acted for Conover, says Conover paid the judgment with his own money, which he borrowed from Speyers; that the judgment was assigned so that they could get out of it all they could for Conover and Mrs. Boice, and that so far as Speyers' mortgage was concerned, their only interest for him was to see that his interests were properly protected by the custody of the assignment of the judgment, and that the money received from the receiver was not to go to Speyers, but to Conover, as it belonged to him. This transaction is substantially a payment of the judgment debtor himself, and such payment, by the settled law of this state, discharges the judgment as against the judgment debtor and those who held interests in his lands subject to the judgment, and the judgment as to them cannot be kept alive by assignment. *Traphagen* v. *Lyons, 38 N. J. Eq. (11 Stew.) 613, 616 (Court of Errors and Appeals, 1884)*, cites the cases from *Bolles* v. *Wade, 4 N. J. Eq. (3 Gr.) 459 (Chancellor Haines, 1844)*. And the assignee of the judgment, even if a *bona fide* purchaser, takes subject to this defence of payment by the judgment debtor in favor of persons interested in the lands. *Traphagen* v. *Lyons, supra, p. 618*. A *fortiori* it must be subject to this defence if assigned and held for the benefit of the judgment debtor. The fact that the Mapes company did not know the money paid on the assignment was the debtor's money, and that it made the assignment as on a purchase by Speyers with his money, cannot

prevent the effect of the payment of the judgment by the debtor's money, for neither the judgment creditor nor debtor can revive or keep the judgment in force against those who have acquired rights in the lands intermediate the judgment and the assignment. *Traphagen* v. *Lyons, supra, p. 617.* This payment also discharged the judgment so far as it was a lien on the proceeds of sale in the hands of the receiver, and had the agreement for such payment been disclosed before the decree, or to the court on appeal, Edwin Allen, as mortgagee, would have been entitled to the fund in court, which was subsequently directed to be paid on the judgment. The decree directed that the money paid to the Mapes, &c., company should be paid in satisfaction of the judgment, and by keeping the judgment apparently alive by the assignment, Speyers, as assignee of the Mapes company, received the money as on a judgment still due from Conover as well as Allen, and in satisfaction of that judgment so far as the money extended. Having thus received the proceeds of sale under the decree unconditionally, and for the purpose of satisfying or paying the judgment as an outstanding valid lien, the judgment, as between Speyers and Conover, is to be considered as still alive and its lien restored for the purpose of payment. Speyers is estopped from denying that it was so received, and in any aspect of the case, whether considered as a purchaser of an outstanding judgment or as receiving the proceeds of sale representing to be valid a judgment already paid by the judgment debtor, he must now perform the conditions imposed by the court of appeals, under penalty of compensating the defendant Edwin Allen, for whose benefit the conditions were imposed, if they cannot be complied with. The judgment being still uncanceled of record, it may, so far as Speyers and Cornelius N. Conover are concerned, be, in Edwin Allen's favor, declared as outstanding, and a lien on the lands still owned by Conover prior to the mortgage of Speyers, and the warrant and satisfaction piece, so far as they are concerned, will be declared void and the use of it enjoined. As to the judgment against Cornelius N. Conover obtained by George D. Nevins, administrator of Mrs. Boice, subsequent to the decision on appeal, the judgment of the Mapes company must also be considered a valid prior lien

on the lands owned by Conover. Not only was the administrator an actual party to the suit on appeal after Mrs. Boice's death, but Mrs. Boice received from Cornelius N. Conover, the judgment debtor, the proceeds of sale, which were paid over by the receiver as on a valid outstanding judgment. The attorneys for Speyers and Cornelius N. Conover were also her attorneys in this transaction, and she is chargeable with notice of the source of the money paid to her and of the circumstances of its receipt by Cornelius N. Conover. For this reason, therefore, and also because they were actual parties to the suit, the subsequent judgment cannot be set up to defeat the right of subrogation given by the decree on appeal.

As to David A. Conover, the other tenant in common, and the defendants holding title under him to the lands partitioned by the voluntary deeds in December, 1895, the judgment, however, must be considered as paid by the judgment debtor at the time of the assignment, and their lands, under the rule in *Traphagen* v. *Lyons, supra,* were *ipso facto* relieved by the payment. This is the undoubted right of these claimants under David A. Conover, so far as relates to Speyers and Cornelius N. Conover. Neither of these persons could enforce the judgment against them, for two reasons—*first,* because the judgment was paid by the judgment debtor and the assignment in Speyers' name was held for Conover's benefit; *second,* because both of them accepted the partition and claim lands under it. Neither of them, therefore, could repudiate the partition. As to these owners, therefore, the question is whether Edwin Allen, as subrogated in equity to the judgment, and notwithstanding its payment by the assignment, is entitled to enforce it as still an existing lien on the lands conveyed to David A. Conover in the partition in the lands or the subsequent purchasers from him. Two of these purchasers—Mrs. MacLaughlin and Mrs. Parker—bought their lands expressly relying on the satisfaction piece, and on the statement that the judgment was paid so far as Cornelius N. Conover and his lands were concerned. These two were purchasers after Metlar, and as between Metlar and them their lands were first liable. Edwin Allen claims that as to all of these purchasers he is entitled to enforce the judgment as still

an outstanding lien, because all of their titles were taken *pen-dente lite,* and with notice of his ultimate equity in the judgment as affecting the lands, as it might be established by the decree in the suit. No *lis pendens* was filed and in the cross-bill actual notice of the suit was alleged. As to none of these defendants claiming under David A. Conover has actual notice of the suit been proved, and as to the defendant Metlar it has been disproved. In my judgment the suit and the cross-bill, even if brought to the actual notice of every purchaser under David A. Conover, did not affect the legal and equitable right of these purchasers to the benefit of the subsequent payment of the judgment by the judgment debtor. The release of their lands followed *ipso facto* upon the payment, both in law and in equity, and must be sustained, unless they are by acts of their own equitably estopped or prevented from setting up the payment against the equitable assignee of the judgment. Edwin Allen's suit on his cross-bill, and the mere fact of purchase *pendente lite,* should not in equity estop or prevent them from having the benefit of the debtor's discharge of the judgment— *first,* because the suit, so far as the judgment was concerned, did not affect or question in any way the right of the judgment debtor to pay the judgment pending suit in relief both of the purchasers *pendente lite* and Edwin Allen, and the decree finally made in the suit is, if the judgment was in fact discharged by the debtor's payment of it, now valid and enforceable purely on the ground of the estoppel, which prevents the actual parties to the suit, and those who procured the funds from the receiver to apply them to an existing judgment, from asserting otherwise. This estoppel is purely personal to the parties to the suit and those who procured the funds to give them to the judgment debtor. The subrogation declared by the decree entitled him to the benefit of the lien of the judgment as it existed immediately before the payment to the judgment creditor by the receiver under the decree, and does not operate on the right of the defendants, other than the parties to the suit, to show that at that time the judgment was not a lien on their lands, because it had been paid by the judgment debtor.

*Second.* The delay in the prosecution of the appeal until

three years after the original decree in chancery was fatal to the effect of the suit as notice. Even as against purchasers *pendente lite* claiming under the parties to the suit a *lis pendens* is notice only when the suit is prosecuted in good faith, with all reasonable diligence and without unnecessary delay. · *2 Pom. Eq. Jur. (3d ed.)* § *634.* And while a judgment or decree in a lower court against the right claimed does not necessarily and at once terminate the *lis pendens,* and the notice continues during a reasonable time for an appeal to be taken, yet in order to retain the benefit of *lis pendens* an appeal must be taken and prosecuted without delay and with such diligence as is required by the circumstances of the case. *2 Pom. Eq. Jur. (3d ed.)* § *634,* and cases cited in notes, *pp. 1071, 1072.* Circumstances may render the full limit of the time for appeal an unreasonable delay, and a delay for a less time may be such indication of a waiver or abandonment of appeal as to justify third persons in considering the suit at an end. Such circumstances existed here. The jurisdiction of the court was originally invoked by the complainant and cross-complainant for the realization of a chattel mortgage security and the disposition of its proceeds. The property was taken possession of by a receiver, sold, and the proceeds of sale were in his hands, as an officer of · the court, for distribution to the parties entitled. A final decree for distribution was made, denying the right to resort to the lands for the judgment, and was carried out. There was no application for a stay pending appeal nor any notice of appeal. Unless it can be said that it is the duty of the receiver, and therefore his right, to retain the funds for three years to await an appeal, the case was one where any defendant intending to appeal should have done so promptly, if he wished the notice by *lis pendens* to continue for his protection; otherwise he should be content to pursue his remedies against the parties to the suit and their responsibility for restitution or compensation if the decree on appeal cannot be carried out. Had a *lis pendens* against the lands been filed with the cross-bill, the appeal must have been taken within three months from the decree, and without holding that, so far as purchasers of lands are concerned, this statutory limit might be regarded as *prima facie* a reason-

able period, I think that the policy of this statute, which prevents the long continuance of clouds on the title to lands by claims against them which have been denied, should be so far followed in this case as to hold that the delay in prosecuting the appeal not being satisfactorily explained, the benefit of the suit as notice has been lost. That any of these purchasers under David A. Conover had notice in fact and outside of the constructive notice by suit; that Edwin Allen claimed subrogation, or that the judgment was in fact paid by the proceeds of sale of the chattels mortgaged to Edwin Allen, has not been proved. That payment was made in this manner is, as against all persons but the actual parties to the original suit, the only basis of any equity to set aside the voluntary partition and to enforce the judgment as still existing against the original undivided interest of the judgment debtor in those lands. This absence of notice and the delay of Edwin Allen in prosecuting either his appeal or his claim to subrogation, after the original decree in chancery, are fatal to his claim to the benefit of the judgment as an outstanding lien on the lands now held under David A. Conover, even if the judgment be not considered paid. The equities of these purchasers under the tenant in common not party to the judgment, as between them and Edwin Allen, equitably subrogated to the judgment, may properly be settled on this bill to have the benefit of the judgment. It is settled in this state that a judgment creditor of one tenant in common is not bound by a voluntary partition made between the tenants in common by mutual deeds after the recovery of his judgment, even though it be fairly made, and that such judgment creditor may decline to be bound by the partition, and may sell under his judgment the undivided interest in the entire lands, as if no partition had been made. *Emson* v. *Polhemus, 28 N. J. Eq.* (*1 Stew.*) *439* (*Court of Errors and Appeals, 1877*). But it is also settled that the purchaser under the judgment may be brought into equity for a partition of the entire lands owned in common before the voluntary partition, and may also, by equities raised against him or the tenant in common under whom he claims, be required to receive on the partition the lands received by the judgment debtor on the voluntary partition. *Polhemus* v.

*Emson, 28 N. J. Eq.* (*1 Stew.*) *576* (*Chancellor Runyon, 1877*); *affirmed on appeal, 29 N. J. Eq.* (*2 Stew.*) *583, 585* .(*1878*). The question, therefore, is whether, considering the judgment as not paid, but outstanding against all persons, the judgment creditor, or Edwin Allen claiming under him, declining to be bound by the partition, are, by any circumstances proved in the case, equitably obliged to carry out the voluntary partition and look to the entire estate in the land released to the judgment debtor, rather than to his undivided interest in the whole land. At the hearing, counsel for Edwin Allen claimed the right under the judgment to sell first the entire fee in lot No. 6, which was released to Cornelius N. Conover in the partition, but this claim to a right conveyed to the judgment debtor under the partition manifestly validates and accepts the partition as binding. *Polhemus* v. *Emson, 28 N. J. Eq.* (*1 Stew.*) *576*, and *29 N. J. Eq.* (*2 Stew.*) *583*, show that the partition must be ignored *in toto* in following out the judgment creditor's rights, and clearly, unless this were so, the judgment creditor, who held a mere security for a debt of one tenant in common, would get the security also of the estate of the other tenant in common, repudiating, at the same time, the payment of the price or consideration upon which it was conveyed. Speyers, the assignee of the judgment, under whom Edwin Allen claims, accepted the partition by taking a mortgage on the lands released to Cornelius N. Conover in the partition. He may, as the holder of the judgment, be bound to make up any loss to the equitable assignee of the judgment by reason of this acceptance, and the Mapes company may be also liable, secondarily, for such loss or damage occurring to the security after commencement of the suit, but it would not be equitable, in view of the delay in the appeal, to ignore the effect of this assignment to Speyers, as accepting a partition; certainly it should not be ignored in the absence of any proof that the division was unfair. I conclude, therefore, that, in any event, and whether the judgment be considered paid or as a valid security against all parties to the suit, it should not be enforced against the lands released to David A. Conover in the partition. The same conclusion is reached as to the lands released to Mrs. Boice, the dowress, on the voluntary partition.

If I am right in concluding that the judgment was in fact paid, it should not be revived in equity against her mortgagee, the defendant Polhemus, guardian, nor should it be revived against Prucella, the subsequent purchaser of the undivided half interest in the land which descended to Cornelius N. Conover after the judgment was paid. Had Cornelius still remained the owner, it might have been retained against him by estoppel, as it is against his other lands. If the judgment be considered not paid, the delay in prosecuting the appeal or a suit for subrogation, and the acceptance of the partition by the assignee of the judgment, also entitled Polhemus and Prucella to protection against the judgment.

If the lands of Cornelius N. Conover, which I find to be still liable to be sold for payment of the judgment, do not produce sufficient to pay the amount to which Edwin Allen is entitled under the decree on appeal, then the defendants Cornelius N. Conover, Nevins, as administrator of Mrs. Boice, the defendant Speyers and the Mapes company, are liable to make up the deficiency. This order of liability results from my conclusion that the judgment was really paid by the debtor, and that it was kept alive by the assignment for the purpose of returning to him the money paid or secured to be paid. As to the order of liability, it now strikes me that the judgment debtor, as receiving the money, is first liable; the estate of Mrs. Boice, a party to the suit, to whom the judgment debtor paid the money over with notice, is secondly liable; Speyers, who allowed the payment of the judgment to himself for the purpose of passing it to the judgment debtor, is thirdly liable. As to the Mapes company, while it appears that the receiver, who was their attorney and knew of the assignment to Speyers, paid the money, as he supposed, to Speyers, and did not know that it was received by the attorneys as money belonging to the judgment debtor, yet by their assignment to Speyers *pendente lite* of the judgment, respecting which an order limiting their control was expressly prayed, they have placed the judgment beyond their control and prevented the carrying out of the conditions imposed by the court of appeal. They must therefore be held liable to Edwin Allen for this result.

If counsel desire to be heard on the question of order of liability in opposition to this view, it may be brought up on settlement of the decree.

If the transaction of the assignment be considered a purchase and not a payment of the judgment, then the liability for deficiency would be somewhat different. The liability in that case would extend only to the difference in the value of the lands received in the partition by the judgment debtor, or subsequently inherited from his mother, and the value of his undivided interest in the whole lands at the time of the decree in chancery. This difference would be all which, if the judgment continued a lien, was lost by the action *pendente lite* of either the Mapes company or Speyers in reference to the judgment. For this deficiency, as between themselves, Speyers would be first liable. If, after receiving the money due on the judgment as his money, he gave it to Conover, the judgment debtor, and released the judgment, he has no equity to a return of the money, or to any further claim on the judgment.

I will advise a decree directing an assignment of the judgment to Edwin Allen, but upon the terms that no proceedings thereunder be taken to sell the lands released to David A. Conover and Gertrude N. Boice in the voluntary partition, and that upon the execution of the assignment these lands be released from the judgment. Decree as to further relief, including injunction against use of the warrant of satisfaction and personal liability of any of the defendants, settled on notice.