**MARTIN v. NORTH AMERICAN CAR CORPORATION.**

No. 21709. May 29, 1934.

Rehearing Denied Sept. 11, 1934.

Hugh M. Sandlin, W. W. Pryor, and Wimbish & Wimbish, for plaintiff in error.

Louis W. Pratt and James Harrington, for defendant in error.

OSBORN, J. The North American Car Corporation, hereinafter referred to as plaintiff, filed an application for injunction against F. L. Martin, hereinafter referred to as defendant, in the district court of Pontotoc county, wherein it was sought to enjoin defendant from proceeding to execute an order of sale of a certain oil refinery located near the town of Allen, Okla. From a judgment in favor of plaintiff, defendant has appealed.

The record shows that on November 10, 1926, plaintiff herein recovered judgment against the Crystal White Refining Company and certain other defendants, who at that time were owners of the above-mentioned oil refinery, in the sum of $12,052.15, with interest, and thereafter levied an execution against said refinery, and the same was sold at sheriff's sale. Plaintiff was the purchaser at said sale and received a sheriff's deed to the property, dated January 18, 1927.

Thereupon plaintiff went into possession of said property and no effort was made by defendant to disturb plaintiff in its possession thereof until February 22, 1929, when the order of sale of said property was issued at the instigation of defendant.

Defendant alleges as his authority for the issuance of said order of sale the following state of facts: That on October 16, 1924, a judgment was rendered in the district court of Pontotoc county in favor of United Iron Works against Harvey Crude Oil Company and a number of other defendants who at that time were the record owners of the above-described property—said judgment for $3,138.20, with interest, and $350 attorney's fees; that on the same day judgment was rendered in favor of Atlas Supply Company on its cross-petition in the same action against said defendants in the sum of $3,500, with interest, and $350 attorney's fees; that said judgments foreclosed mechanics' and materialmen's liens. At that time defendant was in the employ of defendants in said action, the owners and operators of the plant, as superintendent thereof. Defendant alleges that said owners were indebted to him for certain wages which they had contracted to pay at such time as their finances would allow; that it was agreed by the judgment debtors that, instead of paying the judgments direct to the judgment creditors or paying the funds into court, the funds should be delivered to defendant, Martin, and that he should use said funds in payment of the two judgments, and the judgment creditors would execute to him assignments of all their right, title, and interest in and to the judgments. It is further alleged that, in accordance with said agreement, the judgments were so paid and assignments were executed to Martin. The assignment from the United Iron Works was filed of record in the office of court clerk of Pontotoc county March 14, 1925. The other assignment was not recorded.

It is pointed out by defendant that the trial court, included in its judgment, made a finding to the effect that the judgments in question were assigned to defendant for a valuable consideration. In order to determine whether or not said finding is supported by the evidence, it is necessary to review the evidence introduced briefly.

The record shows that a number of persons and corporations were interested in the refinery at various times. It also appears that the property was heavily involved, and that there was outstanding unpaid indebtedness in various amounts to several creditors.

W. A. Delaney testified for plaintiff that he was an attorney representing some of the owners of the refinery at the time the judgments in question were rendered; that a conference of the owners was held, at which time it was suggested that the judgments in favor of the Atlas Supply Company and United Iron Works be paid, but since certain other cases were pending against the owners of the property, including the case of the North American Car Corporation, it was not advisable to show said judgments released of record, but that the judgments were to be paid and an assignment taken in the name of someone else. The following testimony of this witness appears in the record:

"Q. And the money was paid to the judgment creditors? A. Yes, sir. Q. And you were acting under whose direction? A. Well, it was the result of that conference there. Q. Why was it, then, that the judgment was not satisfied on the record? A. Because of the case of North American Car Corporation."

William J. Maroney testified for plaintiff that he was attorney for some of the owners of the refinery and represented them in the litigation in question herein; that he took possession of the property on December 16, 1925, and employed the defendant to work for him and paid him a salary of $150 per month; that the understanding between the various parties, including the defendants, was that the judgments in question were held in the name of Martin, but were actually the property of one L. E. Francis, one of the owners of the refinery, and were to be released as soon as certain other claims were taken care of; that he later demanded a release of defendant, but defendant, without giving any explanation therefor, refused to give him a release.

D. Stagg testified for plaintiff that she was secretary for Louis W. Pratt, attorney for the North American Car Corporation; that at the direction of the defendant she prepared an assignment of the judgments from him to the North American Car Corporation; that he agreed to execute the assignment and told her that he had no interest in the judgments; that defendant was present when the assignment was dictated, but while it was beeing prepared he left the room and did not return and did not sign the assignment.

Louis W. Pratt testified for plaintiff that he was an attorney for the North American Car Corporation and had a conversation with defendant in which defendant told him that he had no interest in the judgments and would do whatever Mr. Francis directed him to do in regard to them; that defendant

agreed to execute an assignment of the judgments, but left the office without signing the same; that witness understood the assignment had been executed and was in the files and had no knowledge that defendant was claiming any interest in the judgments until notified that an order of sale had been issued.

B. C. King testified in behalf of defendant that he was an attorney for one L. E. Francis, one of the owners of the refineries, and that a check was given by defendant in payment of the two judgments in question, but that he did not know where the money came from.

The defendant, testifying in his own behalf, stated that he entered into a contract with one W. J. Herman, one of the owners of the property, to take over the management of the plant, and for services rendered as manager or superintendent, Herman became indebted to him. His testimony in this connection is as follows:

"Q. (By Mr. Pryor) How did you settle with him? A. On December 8, 1920, I made a contract, or agreement, that if I would go down there and take charge of that refinery at Allen, which at that time owed some $70,000 or $80,000, and take charge of the deplorable condition, he would give me $400 a month, and he said, 'You go down there and go ahead at $300 a month until I can get it paid for and when I can get it so I can, I will pay you the other $100 a month.' Q. How did you settle with Mr. Herman? A. I told Mr. Herman that I was going to leave down there at Allen if he didn't pay me what he owed me after I had been there two years and seven months, and on the strength of that he said he would protect me and agreed to furnish money to pay off these liens and put them in my name. Q. Did he turn these judgments over to you? A. Yes, he did, and he had them turned over and he saw that they were personally turned over to me. Q. That's your settlement and his? A. Yes, sir. Q. Who paid the money for those? A. W. J. Herman paid them with his own money."

It is noted that defendant testified at one time that the judgments were turned over to him, and later testified that Herman put the judgments in his name to protect him. Defendant did not at any time testify as to the exact amount owed to him as back wages, so we are unable to compare said amount with the amount of the two judgments transferred to him.

The facts are undisputed, however, that for approximately four years, while the judgments stood of record in the name of defendant, he took no steps to enforce collec-

tion, and now assigns no cause or reason for his failure to do so. During this time plaintiff procured a judgment, issued execution, and advertised the property for sale, purchased at sheriff's sale and went into possession, and remained in undisputed possession thereof for nearly two years before defendant took steps to enforce collection of the judgments. There is no showing that defendant did not have actual notice of all these proceedings. These facts are wholly inconsistent with the defendant's theory that he is the owner of the judgments for a good and valuable consideration, and are consistent with plaintiff's theory that the judgments in question were placed in the name of defendant as a matter of convenience, and for the purpose of preventing a seizure of the property by other judgment creditors.

The record shows that W. J. Herman, the party who furnished the money to defendant for payment of the judgments, was a part owner of the property at that time. He was therefore interested in seeing that the judgments were paid. He had the undoubted right to advance funds of his own to pay said judgments on behalf of the judgment debtors. He is making no claim herein.

It appears that the finding of the trial court that the judgments were transferred to defendant for a valuable consideration is against the clear weight of the evidence.

It is well settled that, subject to certain well-defined exceptions, payment of a judgment by one who is under legal obligation to pay it operates as complete satisfaction of the judgment, and it cannot be kept alive, after payment, by assignment to a third person.

In the case of Ebel v. Stringer (Neb.) 102 N. W. 466, it is said:

"A judgment is extinguished when it is paid by one who is primarily liable for its satisfaction, and it cannot after such payment be kept alive by assignment to a third person or corporation."

See, also, First National Bank of Plattsmouth v. Gibson (Neb.) 84 N. W. 259.

In the case of Kennedy v. Eder (Ind. App.) 139 N. E. 372, it is said:

"The payment and satisfaction of a judgment put an end to it for all purposes and also extinguished the original debt or claim, except where the satisfaction was obtained wrongfully or fraudulently, in which case, on its being revoked or vacated, the judgment will again be in force."

See, also, Boss v. Morgan, 130 Ind. 305,

30 N. E. 141, 30 Am. St. Rep. 237; Stout v. Vankirk, 10 N. J. Eq. 78; Cotter v. O'Connell, 48 Iowa, 552; 34 C. J. p. 723, par. 1114. In the case of Zimmerman v. Gaumer (Ind.) 53 N. E. 829, it is said:

"Payment of a judgment by one primarily liable is an absolute satisfaction, though the judgment is assigned to him."

In the case of Boice v. Conover (N. J. Eq.) 61 A. 159, it is said:

"A payment of a judgment by the judgment debtor discharges the judgment as against him, and those who hold interests in land subject to the judgment, and as to them, it cannot be kept alive by assignment.

"The assignee of a judgment, though a bona fide purchaser, takes subject to the defense of payment by the judgment debtor, in favor of persons interested in the lands on which the judgment was a lien."

The more stable and orderly procedure requires that when a judgment is paid in full by one under legal obligation to pay it, it should be extinguished, and should lose its force and effect as a lien against the property.

We do not hold that a judgment is not subject to transfer and sale, for, under the admitted facts in this case, that question is not involved.

Since the attempted assignment of the judgment is without force and effect, it is not necessary to consider other assignments and arguments of the parties.

The judgment of the trial court is affirmed.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL and ANDREWS, JJ., concur.